IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIFESTYLES UNLIMITED, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Cause No. 4:18-cv-2233 |
| | ) | |
| STEPHEN DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF LIFESTYLES' UNLIMITED, INC.'S
COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Lifestyles Unlimited, Inc. ("LUI"), for its complaint against Defendant Stephen Davis ("Davis" or "Defendant"), hereby alleges as follows:

## PARTIES

1.      LUI is a Texas corporation with its principal place of business located in Harris County, Texas.

2.      On information and belief, Stephen Davis is a resident of Harris County, Texas.

## JURISDICTION AND VENUE

3.      This action for copyright infringement, trademark infringement, breach of contract, and related causes of action arises under 17 U.S.C. § 501, 15 U.S.C. § 1114, 15 U.S.C. § 1125, and the common law of the State of Texas.

4.     This Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 for claims arising under the Copyright and Lanham Acts, and supplemental jurisdiction under 28 U.S.C. § 1367 for the related state-law claim.

5.     This Court has personal jurisdiction over Defendant because Defendant is a resident of Harris County, Texas and has committed acts of copyright infringement and trademark infringement in the Southern District of Texas and elsewhere in the United States.

6.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1), (2) and (c)(1) because Defendant resides in the Southern District of Texas and a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTS

7.     Founded in 1990, LUI is the premier education and mentoring group for real estate investors.

8.     For decades, LUI has taught its program to both beginning and advanced investors, including many members who never have owned real estate.

9.     LUI guides its members step-by-step through property locating, evaluating, negotiating, financing, closing, rehabbing, leasing, and managing.

10.     LUI has changed peoples' lives through these efforts and by virtue of its valuable intellectual property.

11.     Del Walmsley is the founder of LUI, as well as the sole officer, sole director, and sole shareholder.

12.     In 1992, Mr. Walmsley retained Defendant as an independent contractor. Sometime later, Defendant became a full time employee of LUI.

13.     Mr. Walmsley mentored Defendant, paid Defendant millions of dollars over 27 years to be a radio host and salesman, and gave Defendant the opportunity to develop into a successful real estate investor himself.

14.     Defendant was not considered an LUI "Mentor" and never acted as an LUI "Lead Investor$^{TM}$."

15.     Unfortunately, Defendant attempted to undermine Mr. Walmsley's work and LUI itself, which resulted in a lawsuit styled *Stephen Davis v. Delbert E. Walmsley and Lifestyles Unlimited, Inc.*, Cause No. 2015-68571, in the 270th District Court of Harris County, Texas.

16.     That Lawsuit culminated in a Confidential Settlement and Compromise Agreement ("Settlement Agreement"), dated May 10, 2016, between Defendant, Mr. Walmsley, and LUI, which set forth terms for Defendant's continued employment with LUI.

17.     In the Settlement Agreement, Defendant agreed, among other things, that he had no rights of any kind in LUI or any of its "property, rights, assets, titles, leases, contracts, promises, memberships, accounts, stock, intellectual property, ownerships, data, lists, information . . . or any other property of any form pertaining thereto."   *See* Settlement Agreement, Section 1(f).

18.     Defendant further agreed that upon termination of his employment with LUI, he would return LUI's materials within five days of his termination.  *See id.* at Section 1(g).

19.     Attached to the Settlement Agreement is a Confidentiality Agreement, Non-Solicitation Agreement, Covenant Not to Compete and Invention Assignment (the "Confidentiality Agreement") dated May 10, 2016.

20.     Defendant agreed by signing the Confidentiality Agreement that everything he learned while working for LUI belongs to LUI, and he agreed not to disclose it or use it for his personal gain.

21.     Defendant also assigned, transferred, and conveyed to LUI all right, title, and interest in and to "Work Product" which is defined as "all materials and information, including educational content, member (customer) files, created, developed, authored, conceived, reduced to practice, made, discovered, and/or delivered by [Defendant], solely or in collaboration with others, in connection with [the] Agreement and all intellectual property rights in and to the foregoing."  Confidentiality Agreement, Section 4.

22.     Further, all works of authorship to which Defendant contributed during his employment and association with LUI were "works made for hire" under 17 U.S.C. § 101, and thus all such works to which Defendant contributed are owned exclusively by LUI under 17 U.S.C. § 201(b).

23.     Defendant's employment with LUI ended on January 15, 2018.

24.     Since that time, it appears that Defendant has set forth on a deliberate course of infringing LUI's intellectual property rights.

25.     Defendant   has   created   and   now   maintains   a   website, www.getrealwealth.com (the "Website"), which promotes the "belief systems of successful students," techniques, methods, and other information Defendant learned while at LUI.

26.     The Website also promotes an upcoming book authored by Defendant, *From Middle Class to Millionaire* (it has not yet been released) (the "Book"), which refers to the "belief systems of successful students," techniques, methods, and other information Defendant learned while at LUI," which also have been discussed by Defendant during various radio and television appearances since his employment with LUI ended.

27.     The "belief systems of successful students," techniques, methods, and other information Defendant learned while at LUI includes Work Product which Defendant agreed is owned exclusively by LUI, and which, apart from Defendant's agreement, is owned by LUI pursuant to the United States Copyright Laws.

28.     Only by virtue of Defendant's history as an LUI employee who had access to LUI's Work Product would Defendant be able to make such statements.

29.     Additionally, Defendant has posted copies of videos that discuss LUI's goods and services on his Website.

30.     Each of these videos discusses or displays LUI's trademark, LIFESTYLES UNLIMITED®, as represented by United States Registration Nos. 4,485,131 and 4,497,370, and including related common law rights (the "Marks") (registration certificates attached as Exs. A & B).

31.     For example, the video on Defendant's website entitled "Steve Davis on Passive Income" uses the Marks on the video's thumbnail.

32.     Additionally, several videos include a splash page using the Marks, like this



one:

33.     Defendant's use of the Marks on the Website infringes LUI's trademark rights.

34.     Defendant also misrepresents his involvement with LUI throughout the Website.

35.     For example, Defendant falsely says he has mentored "over 100,000 people."  But Defendant was never employed as a Mentor with LUI and his use of this number falsely implies Defendant has more experience than he actually has, and had a more important role with LUI than he actually did.

36.     Defendant also says on his Website that "Over the last 27 years, [Defendant] was a mentor at a real estate investor group with over 27,000 members and students. He has studied the belief systems of the highly successful members and how they differed from the failures and moderately successful. He is uniquely qualified to teach and share

these beliefs with you so that you too can experience the type of success the highly successful members did."

37.     This statement falsely implies that Defendant is "uniquely qualified" and authorized to teach LUI's materials, information, and systems.

38.     Furthermore, Defendant has posted a video interview with Jack Canfield on his website wherein Defendant misrepresents his involvement with LUI and falsely suggests that he is authorized to teach LUI's methods.

39.     For example, Defendant states that "one of the jokes that we had around the group – real estate investor group – was that real estate is not hard, people are hard."

40.     This statement is a confusing variation of a "Delism," which was created by Mr. Walmsley for LUI: "Real Estate is Easy, People are Difficult."  Since as least as early as 1998, LUI has used this phrase in commerce in connection with its real estate investment and related services, and LUI accordingly has trademark rights in the phrase, including common law rights, and LUI has applied for federal registration of the trademark (Application Serial No. 87/956,502).   Defendant learned about this trademark from LUI.  Defendant thus acknowledged LUI's ownership of the trademark in the Settlement Agreement, and Defendant's improper use of the trademark falsely implies that Defendant is associated with LUI.

41.     In the Canfield video, Defendant also discusses diversification, specific examples of LUI's members, and other information that belongs to LUI, all in an effort to improperly capitalize on the business and goodwill LUI has built.

42.     The collection of videos Defendant has posted on the Website were made during Defendant's employment with LUI.

43.     These videos falsely suggest that Defendant is affiliated with LUI, that the services Defendant intends to provide are consistent with those LUI provides, or that LUI endorses the services Defendant intends to provide.

44.     The collective effect of the Website, combined with Defendant's infringement of the Marks, is to unfairly and unjustly capitalize on LUI's goodwill to draw consumers to Defendant's book and his other services, by falsely implying some affiliation with or sponsorship or endorsement by LUI.

45.     Therefore, the Website in its entirety violates § 1125(a) of the Lanham Act.

46.     Through the Website, Defendant is also actively promoting the Book which, according to the Website, will be released on September 5, 2018.

47.     Defendant has provided LUI with an advanced manuscript copy of the Book.

48.     Throughout the Book, Defendant has, without the authorization or consent of LUI, copied in whole or in part constituent elements of works in which LUI has valid and enforceable copyrights, which infringes LUI's copyrights.

49.     For example, and without limitation, the Book contains this language (emphasis added; coloring added for comparison):

> Most people look at life as right or wrong. **The problem is this.  In life, and especially money, there is no right or wrong.  There is either effective, or ineffective.  Simply put, either what you have done has gotten you in the financial position that you want or it hasn't.**  The other

problem is that the words right and wrong can be very ego based and **your ego does not care if you get out of life what you want. It simply wants to appear to other people that you have gotten out of life what you want.** . . .

To get the most out of this book **you must keep your ego in check**. **You must not look at these beliefs as right or wrong. They are either effective or ineffective**.

50.   LUI owns the copyright in this language from an internal training script (the "Script") to which Davis had access at LUI (emphasis added; coloring added for comparison):

Because the ego wants to be right, I'm right, you're wrong and the ego gets involved, and the warning again is, **your ego does not care if you get out of life what you want; it wants to appear to other people as if you have.**

**So to keep the ego in check** during this analysis, let's not use the word right and as Stephen Covey  says, **because in life there is no such thing as right or wrong and especially with money, they are simply effective or ineffective. Simpl[y] put either what you've done to build wealth for yourself and your family has worked or it hasn't.**

51.   By way of another example, and without limitation, the Book contains this language (emphasis added; coloring added for comparison):

**Now let me take a moment to deal with 5 years because some of you are saying that 5 years is not a long time. You may be saying "Well Steve, I have worked 10, 15 or 20+ years for a company.  That is a long time."  You are right but 5 years is also a long time. . . .**

**First, look at our participation in World War II.  Look at everything that was accomplished in less than 5 years** . . . **Second, think about 2008.  The entire world economy changed in a matter of months.  But we have been conditioned to believe that 5 years is not a long time.  I suggest the opposite.  That 5 years is a long time.  In fact, I**

**suggest that if you have done anything for 5 years straight. 40, 50 or even 60 hours a week and you are still not in the financial position that you want to be in.  Then what you are doing is ineffective and you need to change or modify what you are doing.  5 years is a long time.**

52.    The copyrighted Script contains this language (emphasis added; coloring added for comparison):

**Now I want to take a moment to deal with 5 years and the reason is, a lot of people will say to me, "Oh, come on Steve, I've worked for 10 years, 15 years, 20 years for a company, 5 years is not that long.  But we want to suggest the exact opposite. Five years is a tremendously long time.  If you look at the United States participation in World War II and what was accomplished in that 4-5 years that we were in that war.  It was massive.**

**Let's look back to 2008.  In a matter of months the entire world economy changed. But we've all been conditioned to believe that we should go out and work, 40, 50, 60 hours a week for 5 years straight and after that five years still not having enough passive income to meet and exceeds our bills.  We suggest the exact opposite.  If you've done anything 40, 50, 60 hours a week for 5 years straight and you still don't have enough passive income to meet and exceed your bills, then what you're doing is ineffective and you need to change or modify what you're doing.**

53.    Defendant has infringed LUI's copyrights in the Script and in other works.

## COUNT I

### (Copyright Infringement Under 17 U.S.C. § 501)

54.    LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

55.    LUI has filed copyright registration applications with the United States

Copyright Office and obtained assigned case numbers regarding the following works: (1) 1990 training manual (Case No. 1-6717213621); (2) Free Workshop Script (Case No. 1-6717213748; the "Script" defined above); (3) 2014 Free Workshop Video (Case No. 1-6717417654); (4) 2008 Free Workshop Video (Case No. 1-6717514284); (5) Part 1 of teaching presenters free workshop (Case No. 1-6747514899); (6) Part 2 of teaching presenters free workshop (Case No. 1-6717564554); (7) Part 3 of teaching presenters free workshop (Case No. 1-6717564720); and (8) 2015 2-Day Seminar Workbook (Case No. 1-6717417799).

56.    LUI paid the requisite filing fees and made complete material deposits for each of the Copyright Applications prior to initiating this lawsuit.

57.    LUI owns valid copyrights in the works to which the Copyright Applications relate ("Copyrighted Works").

58.    Defendant has, without the authorization or consent of LUI, copied in whole or in part constituent elements of the Copyrighted Works that are original (the "Infringing Work").  The Infringing Work includes the Book.

59.    Defendant, during his employment at LUI, had access to the Copyrighted Works.  Defendant's access included writing the Script and recording videos while he was an employee of LUI.  Defendant's access to the Copyrighted Works was prior to his creation of the Infringing Work.

60.    In addition, the Infringing Work is substantially similar to the Copyrighted Works because the Infringing Work uses the same expression, including organization, concepts, and examples, among other things, as the Copyrighted Works.

61.     For example, the "How to get the most out of this book" section of the Infringing Work contains original elements of at least three of the Copyrighted Works.

62.     In addition, numerous other original elements of the Copyrighted Works are copied in the remaining sections of the Infringing Work.

63.     Defendant has infringed LUI's copyrights in one or more of the Copyrighted Works.

64.     This wrongful conduct constitutes a violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

65.     Defendant's conduct has irreparably damaged LUI and will continue to so damage LUI unless restrained by this Court.

66.     LUI is entitled to an injunction, actual damages, and an award of attorneys' fees and other costs as provided under 17 U.S.C. § 504 and § 505.

## COUNT II

### (Trademark Infringement Under 15 U.S.C. § 1114 & Texas Common Law)

67.     LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

68.     LUI owns valid and enforceable registered trademarks, including the LIFESTYLES UNLIMITED® trademark, as represented by United States Registration Nos. 4,485,131 and 4,497,370.

69.     The Marks were first used in commerce in September 1990 and July 2008, respectively.

70.     LUI used the Marks before any use thereof by Defendant.

71.     The Marks were registered with the United States Patent and Trademark Office on February 18, 2014 and March 18, 2014, respectively.

72.     The Marks are arbitrary, or at the very least suggestive, and are therefore entitled to strong protection under federal and state trademark laws.

73.     Defendant did not at any time have a license to use the Marks.

74.     At no time were the Marks assigned to Defendant.

75.     Defendant has used the Marks in commerce, without permission from LUI, in connection with the sale, offer for sale, advertisement and/or promotion of real estate investment mentoring and training and related goods and services.  Such use is likely to cause confusion or mistake, or to deceive.

76.     Upon information and belief, the activities of Defendant complained of herein constitute willful and intentional infringements of the Marks, and Defendant did so with the intent to trade upon LUI's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's products and services are associated with, sponsored by, originated from, or are approved by, LUI, when they are not.

77.     Upon information and belief, Defendant had actual knowledge of LUI's ownership and prior use of the Marks, and has willfully violated 15 U.S.C. § 1114.

78.     Defendant, by his actions, has damaged LUI in an amount to be determined at trial.

79.    Defendant has irreparably injured LUI by his actions. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of LUI's rights, for which LUI has no adequate remedy at law.

## COUNT III

### (Trademark Infringement Under 15 U.S.C. § 1125 & Texas Common Law)

80.    LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

81.    Defendant has infringed the Marks and created a false designation of origin, by using in commerce, without LUI's permission, the Marks in connection with the advertisement, offering for sale, and/or sale of his real estate investment mentoring and training.

82.    Defendant's actions, including Defendant's use of a confusingly similar variation of "Real Estate is Easy, People are Difficult," are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of LUI with Defendant, and/or as to the origin, sponsorship, or approval of Defendant's goods, services or commercial activities, in violation of 15 U.S.C. § 1125(a).

83.    Upon information and belief, Defendant did so with the intent to trade upon LUI's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's goods and services are associated with, sponsored by or approved by LUI, when they are not.

84.     Upon information and belief, Defendant had actual knowledge of LUI's ownership and prior use of the Marks, and without the consent of LUI, willfully violated 15 U.S.C. § 1125(a).

85.     Defendant, by his actions, has damaged LUI in an amount to be determined at trial.

86.     Defendant, by his actions, has irreparably injured LUI. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of LUI's rights, for which LUI has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, LUI prays for the following relief:

A.      For judgment in favor of LUI and against Defendant on all claims set forth above;

B.      That Defendant, his agents, servants, employees, attorneys, successors, franchisees, licensees and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

   i.      using the Marks, in connection with Defendant's goods and services, using the Marks in advertising or promoting Defendant's goods and services, and/or using confusingly similar variations of the Marks in any manner that is likely to create the impression that Defendant's goods or services originate from LUI, are endorsed by LUI, or are connected in any way with LUI;

ii.      displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any products or services bearing the Marks and/or any confusingly similar marks;

iii.      filing any applications for registration of any trademarks confusingly similar to the Marks;

iv.      otherwise infringing the Marks;

v.      falsely designating the origin of Defendant's products;

vi.      falsely suggesting that LUI sponsors, endorses, or approves of Defendants' goods or services, or falsely suggesting that LUI is affiliated with Defendant;

vii.      unfairly competing with LUI in any manner whatsoever;

viii.      causing a likelihood of confusion or injury to LUI's business reputation;

ix.      using LUI's Work Product, which Defendant is contractually prohibited from using, and which the United States Copyright Laws prohibit him from using;

x.      using LUI's materials that are protected by copyright, including those materials alleged herein;

xi.      displaying the Website in its current form or in any form that violates LUI's copyright and trademark rights; and

xii.      releasing to the public the Book, *From Middle Class to Millionaire*.

C.    That Defendant be directed to file with this Court and serve on LUI within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which he has complied with the injunction pursuant to 15 U.S.C. § 1116;

D.    That Defendant be required to account to LUI for any and all profits derived by Defendant and all damages sustained by LUI by virtue of Defendant's acts complained of herein;

E.    That Defendant be ordered to pay to LUI all damages which LUI has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

F.    That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

G.    That LUI be awarded exemplary damages from Defendant;

H.    That Defendant's actions be deemed willful;

I.    That an award of reasonable costs, expenses, and attorneys' fees be awarded to LUI pursuant to 15 U.S.C. § 1117, and 17 U.S.C. § 505, and to the extent recoverable by any other applicable contract or statute;

J.    That LUI be awarded restitution and disgorgement; and

K.    That LUI be awarded such other and further relief as this Court may deem just.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, LUI hereby demands

a jury trial on all issues in this litigation that are triable to a jury.

DATED this 29th day of June, 2018.

                    Respectfully submitted,

                    SNELL & WILMER, LLP
                    400 E. Van Buren, Suite 1900
                    Phoenix, AZ 85004
                    602.382.6000
                    602.382.6070 (FAX)
                    wcrowson@swlaw.com

By: _____
                    WALKER F. CROWSON
                    State Bar No. 24012480
                    S.D. Texas No. 26595
                    ATTORNEY IN CHARGE FOR PLAINTIFF

4851-3157-5660

# Exhibit A



# United States of America

## United States Patent and Trademark Office

# LIFESTYLES UNLIMITED

**Reg. No. 4,485,131**

**Registered Feb. 18, 2014**

**Int. Cl.: 41**

**SERVICE MARK**

**PRINCIPAL REGISTER**

LIFESTYLES UNLIMITED, INC. (TEXAS CORPORATION)
11200 WESTHEIMER #1000
HOUSTON, TX 77042

FOR: EDUCATION SERVICES, NAMELY, MENTORING IN THE FIELD OF REAL ESTATE INVESTING; PROVIDING EDUCATIONAL MENTORING SERVICES AND PROGRAMS, SEMINARS, CLASSES, CONFERENCES, INSTRUCTIONAL VIDEOS, WORKSHOPS, A RADIO SHOW, AND FIELD TRIPS IN THE FIELD OF REAL ESTATE INVESTING; CONSULTING AND MENTORING SERVICES IN THE FIELD OF REAL ESTATE INVESTING; REAL ESTATE INVESTMENT CLUB SERVICES, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 9-0-1990; IN COMMERCE 9-0-1990.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 86-010,539, FILED 7-15-2013.

CHRISTINA SOBRAL, EXAMINING ATTORNEY



**Deputy Director of the United States
Patent and Trademark Office**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

# Exhibit B

4829-7229-5532

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,497,370**

**Registered Mar. 18, 2014**

**Int. Cl.: 41**

**SERVICE MARK**

**PRINCIPAL REGISTER**

LIFESTYLES UNLIMITED, INC. (TEXAS CORPORATION)
11200 WESTHEIMER #1000
HOUSTON, TX 77042

FOR: EDUCATION SERVICES, NAMELY, MENTORING IN THE FIELD OF REAL ESTATE INVESTING; PROVIDING EDUCATIONAL MENTORING SERVICES AND PROGRAMS, SEMINARS, CLASSES, CONFERENCES, INSTRUCTIONAL VIDEOS, WORKSHOPS, A RADIO SHOW, AND FIELD TRIPS IN THE FIELD OF REAL ESTATE INVESTING; CONSULTING AND MENTORING SERVICES IN THE FIELD OF REAL ESTATE INVESTING; REAL ESTATE INVESTMENT CLUB SERVICES, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 7-0-2008; IN COMMERCE 7-0-2008.

THE MARK CONSISTS OF THE WORDING "LIFESTYLES" ABOVE THE WORDING "UNLIMITED", WITH A STYLIZED HOUSE DESIGN WITHIN A CIRCLE TO THE LEFT OF THE WORDING.

SER. NO. 86-010,542, FILED 7-15-2013.

CHRISTINA SOBRAL, EXAMINING ATTORNEY



**Deputy Director of the United States
Patent and Trademark Office**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.